**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION**

| | |
|---|---|
| In re:<br><br>**LUNT SILVERSMITHS, INC.,**<br><br>Debtor | **Chapter 11**<br>**Case No. 09-32228(HJB)** |

**ASSENTED TO MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED PARTY PURSUANT TO 11 U.S.C. §§ 361 AND 363, AND (II) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b)**

**(EMERGENCY DETERMINATION REQUESTED)**

Lunt Silversmiths, Inc., as debtor and debtor in possession (the "Debtor" or "Lunt"), hereby moves this Court pursuant to sections 105(a), 361 and 363 of title 11 of the United States Code, §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for the entry and approval of interim and final orders (a) authorizing it to utilize cash collateral in which Greenfield Commercial Credit ("Greenfield") holds an interest in the amounts and for the purposes set forth in the budget attached hereto as Exhibit "A" (the "Budget"); (b) approving pursuant to Section 361 of the Bankruptcy Code the grant of a lien to Greenfield on post-petition assets on the same category of assets and with the same priority as was held by it in the Debtor's pre-petition assets, as well as the other adequate protection as set forth herein; and (c) scheduling pursuant to Bankruptcy Rule 4001, a hearing (the "Final Hearing") to consider entry of the Final Order. The Debtor requests that this Motion be determined on an emergency basis.

1. The provisions described in Bankruptcy Rule 4001(b)(1)(B)(i)-(iv) are as follows:

    (a) *Name of Each Entity with Interest in Cash Collateral*. Greenfield Commercial Credit.

    (b) *Purposes of Use of Cash Collateral*. Uses as set forth in the Budget, Exhibit "A".

    (c) *Duration of Use of Cash Collateral*. Projected to be within ninety (90) days of the petition date.

    (d) *Liens, Cash Payments, or Other Adequate Protection to Be Provided to Each Entity with Interest in Cash Collateral.* As adequate protection against diminution in the Prepetition Collateral arising from the Debtor's use of cash collateral, Greenfield is granted a lien on post-petition assets, to the extent of diminution resulting from use of cash collateral in and to the same extent and with the same priority as was held prepetition; as further adequate protection the Debtor has filed a motion seeking leave to sell its assets for a purchase price that will partially satisfy Greenfield.

## JURISDICTION

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(m). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief sought herein are sections 105(a), 361 and 363 of the Bankruptcy Code.

## BACKGROUND

3. On this date (the "Petition Date"), Lunt filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code commencing the above-captioned case.

4. The Debtor is operating as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. No trustee or examiner has been appointed in the Debtor's Chapter 11 case, and no committees have been appointed or designated.

6.      Lunt is a Massachusetts corporation that was formed in 2000 for the purpose of manufacturing and selling silver items for the home. Lunt is a wholly-owned subsidiary of Rogers Lunt and Bowlen Company that had been initially founded in 1902 and had been in the Lunt family for four generations. Most recently, in 2002, majority ownership of Rogers Lunt and Bowlen Company was acquired by James Lunt, President and Chief Executive Officer of the Debtor. Lunt's corporate headquarters are located at 298 Federal Street, Unit B, Greenfield, Massachusetts (the "Real Estate"). The Real Estate has approximately 15,000 square feet of office space and approximately 45,000 square feet of manufacturing facilities. The Real Estate also consists of approximately ten acres of open land, which is currently used by the City of Greenfield as recreational fields.

## Lunt's Operations

7.      For decades, Lunt has operated profitably as a leader among silver manufacturers in the United States, providing a wide range of silver products traditionally focused on silver tableware and giftware.

8.      Lunt's current financial challenges stem from three areas. First, in recent years, the consumer market has dramatically decreased its demand for traditional Lunt silver products. Additionally, the consumer market in the United States consolidated to a price-oriented retail focus. This was clearly evidenced when Federated Department Stores acquired a variety of other department store chains, and commanded an enormous scale and authority over the Lunt retail sale operation. As a result, pricing of traditional products became problematic. Additionally, raw materials in the form of silver bullion increased from approximately $5 per ounce to approximately $20 per ounce in less than twelve months, causing a direct reduction in gross margins. Finally, the global economic crisis in 2008 negatively impacted Lunt's existing credit

facilities, hampering its ability to produce goods and deliver in a timely manner. By the end of 2008, Lunt was forced to fund its losses through the collection and reduction of its accounts receivable.

9. Not surprisingly, the balance sheet's degradation put Lunt out of formula on its working capital Line of Credit with Greenfield.

**Debt Structure**

10. The Greenfield debt arises from a 2008 refinancing by Lunt of its then existing debt and, as of December 16, 2009, had an outstanding balance of approximately **$1,441, 350.** Greenfield provided the funding to Lunt pursuant to a Loan Agreement dated as of May 28, 2008 ("Loan Agreement"), as amended from time to time. Specifically, Greenfield funded a $4,000,000 revolving line of credit ("Line of Credit"), as evidenced by an Amended and Restated Revolving Credit Loan Note ("Note"), which matured on July 28, 2009. Greenfield and the Debtor are now operating under a Forbearance and Liquidation Agreement.

11. The Debtor's obligations to Greenfield under the Note are secured, pursuant to a Security Agreement also executed on or about May 28, 2008, by substantially all assets of the Debtor. Greenfield perfected its secured interest in the Greenfield Collateral through the filing of a UCC-1 Financing Statement with the Commonwealth of Massachusetts Secretary of State's Office on or about June 4, 2008. Greenfield does not have a mortgage on the Real Estate, and the property is unencumbered, with the exception of real estate taxes owed to the City of Greenfield in the approximate amount of $147,000.

12. Lunt's remaining debt consists of approximately $1,580,000 in trade payables as of December 15, 2009.

**Reorganization Strategy**

13.     Lunt, in consultation with its advisors, determined that a sale of Lunt's assets was in the best interests of the company and its creditors. In furtherance of that strategy, James Lunt pursued and negotiated with Lunt's oldest competitor in the silver business, Reed and Barton Corporation ("R&B"), an agreement for the sale of its assets in a sale under §363 of the Bankruptcy Code.

14.     Under the terms of an executed asset purchase agreement (the "APA"), R&B will purchase, subject to solicitation of higher and better offers and entry of an order of this Court approving the transaction, all assets of Lunt with the exception of those expressly excluded. Those assets to be purchased include certain finished goods, work in process, components, raw materials, spec samples, tools, inventory, intellectual property, sales collateral materials, customer and supplier records and UPC numbers (the "Acquired Assets"). The assets that are excluded from the scope to be acquired by R&B include the Real Estate, cash on hand, accounts receivable, certain equipment, inventory, furniture, and fixtures as of the closing date (the "Excluded Assets").

15.     In consideration of the acquisition of the Acquired Assets, R&B has offered to pay cash consideration of $700,000.

16.     R&B, the proposed purchaser, is a Massachusetts corporation with a principal place of business in Massachusetts that conducts a worldwide silversmith business. Its CEO, as well as a minority shareholder of R&B, is Tim Riddle.

17.     R&B, Tim Riddle, as well as all the other shareholders, officers and directors, are unrelated, disinterested parties and are not connected or associated directly or indirectly with Lunt.

18. Lunt anticipates that, if R&B is ultimately determined to be the winning bidder, James Lunt, the president of Lunt, will be offered temporary employment in the post-closing acquisition entity as a consultant. In the event that R&B is the successful bidder, James Lunt is currently negotiating the terms of a Consulting Agreement with R&B for three months and a Non-Competition Agreement for two years.

19. Lunt has used the R&B APA as a base around which it has built a plan to liquidate its assets. The $700,000 sale proceeds in the proposed R&B sale transaction will reduce the secured debt to Greenfield dollar for dollar.

20. As of the date of the Petition, Lunt is owed approximately $392,000 in accounts receivables (the "AR"), which is an Excluded Asset. The AR are mailed and deposited directly to a depository account held by Greenfield (the "Depository Account") at Wells Fargo. Lunt intends that the post-petition AR will continue to be deposited in Greenfield's Depository Account in the same manner and will be applied to Lunt's indebtedness to Greenfield on the Note.

21. Additional funds are anticipated from the sale of Excluded Assets, including the sale of the Real Estate. It is anticipated this will pay Greenfield any deficiency of the secured debt after the liquidation of all of Greenfield's collateral and generate a significant dividend for unsecured creditors.

## RELIEF REQUESTED

22. Lunt is seeking authority to use cash collateral and grant adequate protection as set forth herein.

23. Pending entry of the final order, Lunt requests that the Court authorize it, on an interim basis, to (i) use cash collateral as set forth herein; (ii) provide adequate protection to

Greenfield; (iii) approve the proposed notice of the Final Hearing; and to (iv) schedule the Final Hearing.

**<u>Use of Cash Collateral and Proposed Adequate Protection</u>**

24. The Debtor is seeking approval from the Court for the Debtor to use the Greenfield Cash Collateral, which is intended to fund post-petition operations and the continued liquidation of the Debtor's assets. Lunt, therefore, requires use of cash on-hand and post-petition collections to fund budgeted expenses.

25. Pursuant to the Loan Agreement, the Depository Account is maintained at Wells Fargo.

26. The customers of the Debtor remit payments directly to the Depository Account. The Debtor believes that the deposited receipts may constitute "cash collateral" as defined in 11 U.S.C. § 363(a).

27. As of the Petition Date, the Debtor had cash on deposit in its operating account the amount of approximately $3,500. The account in which the cash is held is with TD Bank, N.A. The Debtor has insufficient funds to operate without the use of Cash Collateral.

28. Greenfield's claim is secured by a lien on essentially all assets and the proceeds and products thereof, except the Real Estate.

29. In order for Lunt to address its working capital needs and fund its reorganization efforts, Lunt requires the use of cash, cash equivalents and the products and proceeds of prepetition collateral of Greenfield (the "<u>Cash Collateral</u>"). The use of Cash Collateral will provide Lunt with the necessary capital with which to continue to sell its assets, pay its employees, maximize value, and pursue a liquidation plan under Chapter 11. The Debtor must employ the funds presently collected in the Depository Account and the funds which will come

into the Depository Account on a daily basis. The estimated amounts needed for each category of expenses are set forth in Exhibit "A".

30. Greenfield will be adequately protected through the liens on post-petition assets being granted to secure any diminution in its prepetition collateral resulting from use of the Cash Collateral. In addition, use of cash collateral will enable the Debtor to consummate a sale to R&B and other prospective purchasers that will provide for partial, if not full, payment to Greenfield, providing further adequate protection.

31. The Debtor requests that this Motion be determined on an emergency basis, because without use of Cash Collateral the Debtor will not be able to operate or fund its liquidation.

### The Use of Cash Collateral Should Be Approved

32. Under section 363(c)(2) of the Bankruptcy Code, a debtor in possession may use cash collateral if either "(a) each entity that has an interest in such cash collateral consents; or (b) the Court, after notice and a hearing, authorizes such use ... in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

33. The Debtor requires the use of Cash Collateral to fund its day-to-day liquidation operations. Indeed, absent such relief, the Debtor's business will cease operations immediately. The interests of Greenfield in the Debtor's Cash Collateral will be protected by the adequate protection set forth above.

### The Proposed Adequate Protection Should Be Authorized

34. Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used ... or proposed to be used ..., the Court, with or without a hearing,

shall prohibit or condition such use ... as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

35. Section 361 of the Bankruptcy Code sets forth the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. § 361.

36. What constitutes adequate protection must be decided on a case-by-case basis. *See In re O'Connor,* 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin,* 761 F.2d 472 (8th Cir. 1985); *In re Shaw Indus., Inc.,* 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Swedeland Dev. Group, Inc.* 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained pre-bankruptcy.")

37. Use of Cash Collateral will enable the Debtor to orderly liquidate its assets in a timely manner. That sale will provide for partial payment to Greenfield. Enabling the Debtor to provide payment, complete with the grant of liens on post-petition assets, affords adequate protection. Conversely, inability to use Cash Collateral will result in cessation of business operations and a liquidation that yields a fraction of Greenfield's claim.

## **Interim Approval Should Be Granted**

38. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than fifteen (15) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

39.     Pursuant to Bankruptcy Rule 4001(b) the Debtor requests that the Court conduct an emergency preliminary hearing on this motion and (a) authorize the Debtor to use Cash Collateral on an interim basis, pending entry of a final order, in order to (i) maintain and finance the operations of the Debtor, and (ii) avoid immediate and irreparable harm and prejudice to the Debtor's estates and all parties in interest, and (b) schedule a hearing to consider entry of a final order.

40.     The Debtor has an urgent and immediate need for cash to continue to operate. Absent authorization from the Court to use cash collateral, as requested, on an interim basis pending a final hearing on the Motion, the Debtor will be immediately and irreparably harmed. The interim relief requested is therefore critical to preserving and maintaining the going concern value of the Debtor and facilitating its liquidation efforts.

41.     The Debtor submits that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

42.     To implement the foregoing, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the ten-day stay under Bankruptcy Rule 6004(h).

WHEREFORE the Debtor respectfully requests entry of an order, substantially in the form attached hereto as Exhibit "B," granting the relief requested herein, and such other and further relief as is just.

Respectfully submitted,

LUNT SILVERSMITHS, INC.

By its proposed counsel,

SHATZ, SCHWARTZ AND FENTIN, P.C.

By: /s/ Edward V. Sabella
   Edward V. Sabella, Esquire
   esabella@ssfpc.com
   BBO #436820
   Steven Weiss, Esquire
   sweiss@ssfpc.com
   BBO #545619
   L. Alexandra Hogan, Esquire
   lahogan@ssfpc.com
   BBO #672561
   1441 Main Street – Suite 1100
   Springfield, MA  01103
   Telephone - (413) 737-1131
   Facsimile - (413) 736-0375

Dated:  December 18, 2009

09\0185\Cash Collateral\CashCollateral Motion.4803