**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**WESTERN DIVISION**

| | |
|---|---|
| **In re:**<br><br>**LUNT SILVERSMITHS, INC.,**<br><br>                    **Debtor** | **Chapter 11**<br>**Case No. 09-32228(HJB)** |

**DEBTOR'S MOTION FOR AN ORDER (I) (A) APPROVING SALE PROCEDURES IN CONNECTION WITH SALE OF CERTAIN OF THE DEBTOR'S ASSETS, (B) APPROVING EXPENSE REIMBURSEMENT, (C) SCHEDULING AN AUCTION AND HEARING TO APPROVE THE TRANSACTION AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF AND (II) APPROVING THE PROPOSED SALE**

**(EMERGENCY DETERMINATION REQUESTED)**

Lunt Silversmiths, Inc. ("Lunt") or the "Debtor"), hereby moves pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of (I) an order (a) approving sale procedures in connection with sale of the Debtor's assets (the "Bidding Procedures"), (b) approving the expense reimbursement, and (c) scheduling an auction and hearing approving the transaction and approving the form and manner of notice thereof; and (II) an order (a) approving the proposed sale and (b) granting certain related relief (the "Motion"). The Debtor respectfully requests that the Court considers this Motion on an emergency basis. In support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this case and this

Motion in this District is proper pursuant to 28 U.S.C. § 1408.

2.      The statutory predicates for the relief requested herein are sections 105(a), 363(b),

363(f), 503 and 507 of the Bankruptcy Code, and Bankruptcy Rules 2002(a)(2), 2002(m), 6004,

9007 and 9014.

## BACKGROUND

3.      On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for

relief under Chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code, the Debtor is liquidating its assets and managing its affairs as a debtor-in-

possession.  As of the date hereof, no creditors' committee, trustee or examiner has been

appointed in this Chapter 11 case.

## RELIEF REQUESTED

4.      By this Motion, the Debtor seeks entry of an order (a) approving sale procedures

in connection with sale of substantially certain assets of the Debtor associated with the

manufacture and sale of silver and related home and gift products, subject to higher or better

offers, (b) approving an expense reimbursement for Reed and Barton Corporation (the "Proposed

Purchaser" or "R&B"), and (c) scheduling an auction and hearing to approve the transaction and

approving the form and manner of notice thereof.  In addition, the Debtor also seeks, at the

conclusion of the Sale Hearing (defined below), entry of an order (a) authorizing the sale of

those assets of the Debtor relating to the manufacture and sale of silver and related home and gift

products, as more specifically identified in the Asset Purchase Agreement attached hereto as

Exhibit A (the "Asset Purchase Agreement" or "APA"), to the Proposed Purchaser or such other

person or entity who is the Prevailing Bidder (defined below) free and clear of all liens, claims

and encumbrances, and (b) granting certain related relief (such order is referred to as the "Sale

Order").

## PROPOSED SALE AND PROPOSED PURCHASER

5.      The assets to be sold consist of substantially all assets of the Debtor's silver and

related home and gifts product design, manufacturing and sale operation, listed more fully in

Exhibit A to the APA, other than those assets defined as "Excluded Assets."

6.      Under the terms of the APA, R&B will purchase, subject to solicitation of higher

and better offers and entry of an order of this Court approving the transaction, those assets of

Lunt associated with the manufacture and sale of silver and related home and gift products, with

the exception of those assets expressly excluded as identified in the APA.  Those assets to be

purchased include certain inventory, finished goods, work in process, components, raw materials,

spec samples, tools, molds, intellectual property, sales collateral materials, customer and supplier

records, and UPC numbers.

7.      The assets that are excluded from the scope to be acquired by R&B include real

estate, cash on hand and on deposit, accounts receivable, equipment, furniture, fixtures, and

certain other inventory as of the closing date.

8.      Among the included assets are the intellectual property rights related to the

Debtor's silver home and gift products operations.  The Debtor both owns, and licenses, certain

proprietary designs used in the home and gift products it produces in connection with that

portion of its business that it is seeking authority to sell pursuant to this motion.  Although this motion does not seek authority to assume and assign the inbound intellectual property licenses the Debtor uses in its operations, it is a condition to the Proposed Purchaser's obligation to close the transaction envisioned herein that it make arrangements reasonably acceptable to the Proposed Purchaser for continued use of the intellectual property rights afforded to the Debtor pursuant to its inbound licenses with the licensors of that intellectual property.

9.    The property to be purchased by the Proposed Purchaser also includes inventory designed and manufactured under the authority of those same inbound licenses.  The Proposed Purchaser may, at its option, close the transaction despite the failure to reach agreement with the licensors.  Through this motion, the Debtor seeks entry of an order that, should the Proposed Purchaser opt to close the transaction envisioned hereunder despite failure to reach agreement with licensors of those intellectual property rights used in the design and manufacture of the Debtor's inventory, the sale from the Debtor to the Proposed Purchaser shall constitute an authorized first sale of such inventory, the Proposed Purchase shall be deemed an owner of such inventory pursuant to 17 U.S.C. §109(a) authorized to re-sell such inventory free and clear of any claims of the licensors, or any other party, including, but not limited to, any claims of copyright infringement.

10.    In consideration of the acquisition of the Acquired Assets, R&B has offered to pay cash consideration of $700,000, subject to adjustments as set forth in Section 2.07 of the APA.

11.    R&B, the proposed purchaser, is a Massachusetts corporation with a principal place of business in Massachusetts that conducts a national retail sales network.  Its operations

include the design and sale of silver gift and home products, including products manufactured in accordance with proprietary designs owned or licensed by R&B.

## BASIS FOR RELIEF

### A.   Approval Of Bid Procedures

12.   The Motion seeks, among other things, approval of the Bidding Procedures to be used in connection with soliciting higher and better offers for the sale of all or substantially all of the Debtor's assets, and to approve certain "stalking horse" protections to the Proposed Purchaser.

13.   The Bidding Procedures are designed to maximize value for the Debtor's estate and ensure that a marketing and sales process is undertaken by the Debtor in accordance with the timeline required by the Proposed Purchaser and to afford the maximum possible return to creditors.  The Bidding Procedures are the result of negotiations between the Debtor and the Proposed Purchaser and are summarized as follows:

A.   <u>Assets to be Sold</u>:  The Debtor shall offer for sale substantially all of the property and assets (the "<u>Asset Sale</u>") of the Debtor's silver and related home and gift business as identified in further detail in the Asset Purchase Agreement (collectively, the "<u>Acquired Assets</u>").

B.   <u>Purchase Price</u>:  The consideration to be paid by the Proposed Purchaser for the Acquired Assets under the Asset Purchase Agreement is $700,000 plus or minus the adjustment as set forth in Section 2.07 of the APA.

C.   <u>Potential Participation Requirements</u>:  Any person who wishes to participate in the bidding process (each, a "<u>Potential Bidder</u>") must become a "Qualifying

Bidder."  As a prerequisite to becoming a Qualifying Bidder (and, thus, being able to conduct

due diligence), a Potential Bidder: (i) must deliver an executed confidentiality agreement in form

and substance acceptable to the Debtor no later than thirty (30) calendar days subsequent to the

Petition Date; and (ii) must be financially able, as determined by the Debtor, to consummate a

transaction to purchase the Acquired Assets.

        D.    <u>Due Diligence</u>:  The Debtor shall afford to any Qualifying Bidder the time

and opportunity to conduct reasonable due diligence, subject to certain requirements that the

Debtor deems appropriate.  The due diligence period shall extend through and include the Bid

Deadline (defined below).

        E.    <u>Bid Requirements</u>:  To be deemed a "Qualifying Bid," a bid must be

received from a Qualifying Bidder by a date no later than the Bid Deadline that:

    i.    states such Qualifying Bidder offers to purchase the Acquired

Assets, upon the terms and conditions substantially as set forth in

the APA or pursuant to an alternative arrangement that the Debtor

determines is no less favorable than the terms and conditions of the

APA;

    ii.    is accompanied by a duly executed asset purchase agreement (the

"Modified Asset Purchase Agreement") with evidence of Board of

Director or other governing approvals and a marked Modified

Asset Purchase Agreement reflecting any variations from the Asset

Purchase Agreement executed by the Proposed Purchaser;

    iii.    states such Qualifying Bidder is financially capable of

consummating the transactions contemplated by the Modified

Asset Purchase Agreement without financing contingencies of any

kind and provides written evidence in support thereof;

iv.     states such Qualifying Bidder's offer is irrevocable until the closing

of the Asset Sale if such Qualifying Bidder is the Prevailing

Bidder;

v.      contains reasonable provisions for the Debtor to make a

determination as to the Qualifying Bidder's financial and other

capabilities to consummate the transactions contemplated by the

Modified Asset Purchase Agreement;

vi.     does not request or entitle such Qualifying Bidder to any break-up

fee, expense reimbursement or similar type of payment;

vii.    fully discloses the identity of each entity that will be bidding in the

Asset Sale or otherwise participating in connection with such bid,

and the complete terms of any such participation;

viii.   will result in value to the Debtor's estate that is $60,000 more than

the aggregate of the Purchase price, _plus_ the amount of the

Expense Reimbursement (as defined in the APA); and

ix.     provides certified funds as a purchase deposit equal to seven

percent (7%) of the purchase price contained in the Asset Purchase

Agreement; and

A competing bid shall constitute a Qualifying Bid only if it meets the requirements of

Paragraph 13(E) i-ix above.

F.    Bid Deadline:  A Qualifying Bidder shall deliver its bid by written or electronic copy of its bid by a date no later than thirty-five (35) calendar days subsequent to the entry of the Bid Procedures Order. If no Qualifying Bids are received by the Bid Deadline, the Debtor shall request at the Sale Hearing that this Court approve the APA with the Proposed Purchaser.

G.    Evaluation of Qualifying Bids:  If the Debtor has received a timely, conforming Qualifying Bid, the Debtor shall notify the bidder whether its bid has been determined to be qualified by a date no later two (2) days prior to the Auction Date (defined below).

14.    Auction:  In the event that the Debtor timely receives one or more Qualifying Bids other than the Asset Purchase Agreement, the Debtor shall determine which Qualifying Bid is the highest and best value to the Debtor.  The Debtor shall, on a date to be determined by the Debtor, conduct the Auction no later than the date that is five (5) business days after the Bid Deadline (the "Auction Date").

15.    Auction Procedures:  The Auction shall be governed by the following procedures:

    i.    only the Proposed Purchaser, who shall be deemed a Qualifying Bidder, and the other Qualifying Bidders shall be entitled to make any subsequent bids at the Auction;

    ii.    the Qualifying Bidders shall appear in person at the Auction or through a duly authorized representative;

    iii.    bidding shall commence at the amount of the highest Qualifying Bid submitted by the Qualifying Bidders prior to the Auction;

iv.     Qualifying Bidders may then submit successive bids in increments of at least $50,000 higher than the bid at which the Auction commenced and then continue in minimum increments of at least $50,000 higher than the previous bid, provided that the Debtor shall retain the right to modify the bid increment requirements at the Auction;

v.     all Qualifying Bidders shall have the right to submit additional bids and make additional modifications to the Asset Purchase Agreement or the Modified Asset Purchase Agreement at the Auction, provided that any such modifications to the Asset Purchase Agreement or Modified Asset Purchase Agreement on an aggregate basis and viewed in whole, shall not be less favorable to the Debtor than the terms of the Asset Purchase Agreement;

vi.     the Auction shall continue until there is only one offer that the Debtor determines, subject to this Court's approval, is the highest or best from among the Qualifying Bids submitted at the Auction (the "Prevailing Bid").  The bidder submitting such Prevailing Bid shall become the "Prevailing Bidder," and shall have such rights and responsibilities of the purchaser, as set forth in the applicable Asset Purchase Agreement or Modified Asset Purchase Agreement; and

vii.     within one (1) day after adjournment of the Auction, the Prevailing Bidder shall complete and execute all agreements, contracts,

instruments and other documents evidencing and containing the

terms and conditions upon which the Prevailing Bid was made.

16.    <u>Sale Hearing:</u>  The Prevailing Bid (or the Asset Purchase Agreement if no

Qualifying Bid other than that of the Proposed Purchaser is received) will be subject to approval

by this Court.  The hearing to approve the Prevailing Bid (or the Asset Purchase Agreement if no

Qualifying Bid other than that of the Proposed Purchaser is received) (the "<u>Sale Hearing</u>") shall

take place no later than two (2) business days following the conclusion of the Auction or the

expiration of the Bid Deadline in the event that no Qualifying Bids are submitted by the Bid

Deadline.  The Debtor will seek the entry of an order of this Court at the Sale Hearing approving

and authorizing the Asset Sale to the Proposed Purchaser or to the Qualifying Bidder submitting

the highest and best offer at the Auction, as applicable, on terms and conditions consistent with

the Asset Purchase Agreement, as may be amended and modified.

17.    <u>Return of Deposit:</u>  All deposits shall be returned to each bidder not selected by

the Debtor as the Prevailing Bidder no later than five (5) business days following the substantial

consummation of the sale to the Prevailing Bidder.

**B.    <u>Approval of Notice Procedures</u>**

18.    The Debtor requests an Order designating the form and manner of Notice of the

Auction and Sale Hearing pursuant to Bankruptcy Rule 2002(m).

19.    Not later than two (2) business days after entry of the Bid Procedures Order, the

Debtor will serve a written hardcopy of the Notice of Auction and Sale Hearing, substantially in

the form attached hereto as <u>Exhibit B</u> (the "<u>Sale Notice</u>") to the interested parties as hereinafter

set forth in this Section B of the Motion.

20.    Together with the Sale Notice, the Debtor requests entry of an Order authorizing the service of this Motion, together with all exhibits, and the Bid Procedures Order by mailing a Notice of Filing of Motion ("Notice of Motion") in the form of which is attached hereto as Exhibit C, which directs recipients to the website of Debtor's proposed undersigned counsel, www.ssfpc.com, from which the Motion, its exhibits and the Bid Procedures Order can be downloaded without charge.  The Notice of Motion provides directions for requesting paper copies of the Motion, its exhibits, and the Bid Procedures Order, which would be furnished immediately upon said written request.

21.    The Debtor proposes furnishing a copy of the Sale Notice and Notice of Motion upon (i) counsel to all parties holding liens in the Acquired Assets, if known, and otherwise, directly upon such lien holders; (ii) the United States Trustee for the District of Massachusetts; (iii) the Internal Revenue Service; (iv) the Massachusetts Department of Revenue; (v) all creditors; (vi) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (vii) all licensors of, or other holders of interest in, all intellectual property rights licensed to, or used by, the Debtor in the design or manufacture of home, gift or other products, including but not limited to, those products associated with the segment of the Debtor's business that it proposes to sell pursuant to this Motion, and (viii) all other entities known to have expressed an interest in a transaction with respect to all or part of the Acquired Assets.

22.    In support of this request, the Debtor states that there are about 300 creditors in this case.  The cost of copying and mailing this Motion, its exhibits including the APA, and the Bid Procedures Order will be substantial and burdensome to the Debtor in light of the voluminous number of pages involved.

23.    The Debtor states that service in the form and manner stated herein to the foregoing interested parties is sufficient and will significantly reduce costs to the Debtor.

**C.    Approval of Buyer Protections**

24.    To induce the Proposed Purchaser to expend the time, energy and resources necessary to submit a stalking horse bid, the Debtor has agreed to provide the Proposed Purchaser, and seek this Court's approval of, certain bid protections to the Proposed Purchaser pursuant to the terms of the Asset Purchase Agreement.  As set more specifically below, the Debtor has agreed to provide the Proposed Purchaser with a right to expense reimbursement equal to the actual costs and expenses incurred by the Prospective Purchaser in investigating, negotiating, pursuing and documenting the transaction envisioned herein, including legal and accounting fees, capped at $50,000.

25.    By this Motion, the Debtor seeks authorization to pay the Proposed Purchaser expense reimbursement (the "Expense Reimbursement") in the amount of up to $50,000 if the Debtor accepts an alternative transaction for the sale of the Acquired Assets to any party other than the Proposed Purchaser, to be paid exclusively from sale proceeds.

26.    The Expense Reimbursement cap has been calculated as an estimate of the amount necessary to reimburse the Proposed Purchaser for its reasonable out-of-pocket costs and expenses (including legal fees and expenses) incurred in connection with the formation, negotiation and documentation of the Asset Purchase Agreement and to fund reasonable expenses the Proposed Purchaser incurs with respect to obtaining financing and its due dilgence and its participation in the sale process.  Although the amount payable may be less than the $50,000 cap, the Debtor has identified the capped amount in order to afford potential bidders

certainty in formulating any bid, and capped the maximum amount so as not to chill the

submission of such overbids.

27.     It is understood by the Debtor, that in entering into the Asset Purchase

Agreement, the Proposed Purchaser has provided a material benefit to the Debtor and its

creditors by increasing the likelihood that the best possible price for the Debtor's assets will be

received.  The Expense Reimbursement induced the Proposed Purchaser to submit a bid that will

serve as a minimum floor bid on which the Debtor, its creditors and other bidders may rely.

Accordingly, the Debtor represents that the Expense Reimbursement is reasonable and

appropriate and represents the best method for maximizing value for the benefit of the Debtor's

estate.

**D.     Disposition of Proceeds**

28.     Finally, the Debtor seeks authority to disburse the proceeds at the closing of the

sale to the Greenfield Commercial Credit.  The Debtor's assets are subject to a first priority,

perfected, all asset lien held by Greenfield Commercial Credit, securing a claim of

approximately $1,430,000.

**E.     Emergency Determination**

29.     The Debtor requests that this Motion and the determination of the Bid Procedures

be made on an emergency basis.

30.     Greenfield Commercial Credit is the Debtor's only secured creditor.  Greenfield

provided the funding to the Debtor pursuant to a Loan Agreement dated as of May 28, 2008.

Specifically, Greenfield funded a $4,000,000 revolving line of credit ("Line of Credit"), as

evidenced by an Amended and Restated Revolving Credit Loan Note, as amended from time to

time.  As of December 15, 2009, the Debtor owed GCC approximately $1,430,000 on the Line of Credit.

31.      Once the sale of the Acquired Assets has been consummated as contemplated herein, Greenfield will be paid from the proceeds and the Debtor's Line of Credit will be paid down, as set forth in the Debtor's motion for use of cash collateral which has been filed contemporaneously herewith.

32.      In order to continue operations and conduct an orderly liquidation of the Debtor's business, the Debtor will require continued funding from its line of credit with Greenfield. However, Greenfield is depending on an expedient and successful sale of the Acquired Assets in order to continue funding the Debtor.

33.      In order to maximize the return to Greenfield Commercial Credit, and minimize the risk of an administrative insolvency, the Debtor seeks emergency determination of this Motion and the Bid Procedures so that the Debtor is able to complete all steps necessary for it to close the sale transaction.

34.      For the reasons set forth herein, the Debtor submits that scheduling an emergency hearing on the Bid Procedures is necessary to avoid immediate and irreparable harm to the estate.

### APPLICABLE AUTHORITY

**A.      Bidding Procedures**

      **(i)      The Bidding Procedures are Fair and are Designed to Maximize the Value Received for the Assets Given the Financial Exigencies Facing the Debtor**

35.     The Bidding Procedures proposed herein are designed to maximize the value received for the Debtor's business by facilitating a competitive bidding process in which all Potential Bidders are encouraged to participate and submit competing bids, taking into account the financial exigencies facing the Debtor.

36.     The Bidding Procedures provide Potential Bidders with more than the twenty days' notice envisioned by Rule 2002 of the Bankruptcy Rules, which is sufficient notice and an opportunity to acquire the information necessary to submit a timely and informed bid.

37.     At the same time, the Bidding Procedures provide the Debtor with the opportunity to consider all competing offers and to select the highest or best offer for the completion of an Asset Sale.  Entering into the Asset Purchase Agreement with the Proposed Purchaser insures fair value by setting a minimum purchase price and testing the price in the marketplace. Accordingly, the Debtor and all parties in interest can be assured that, taking into account the financial condition of the Debtor, the consideration paid for the Debtor's business will be fair, reasonable, and in the best interest of the Debtor's estate and creditors, and there are sound business reasons to approve the Bidding Procedures.

**(ii)     The Expense Reimbursement is Reasonable and Appropriate**

38.     Approval of the Expense Reimbursement is addressed in the Local Rules of this Court; pursuant to Local Rule 6004-1(a)(1)(B)(1) prior approval of a breakup or similar fee is only required if the proposed bid protector exceeds five percent (5%) of the Purchase Price.

39.     The sole bid protection being provided to the Purchaser is up to a $50,000 expense reimbursement.  While the maximum amount, if realized, marginally exceeds five percent of the cash consideration, being approximately seven percent (7%) of the cash

consideration, due to the complexity of the deal and the speed with which it has proceeded, the

expense reimbursement of up to $50,000 is reasonable.

40.     After considering the reasonableness of bidding incentives, courts have approved

a range of break-up fees as a percentage of the purchase price in the range provided here as being

appropriate under the facts and circumstances of the case.  See *In re Great Northern Paper, Inc.*,

Case No. 03-10048 (Bankr. D. Me. February 18, 2003) (fee of 5.4% plus reimbursement of

expenses upheld).

41.     The Expense Reimbursement should be approved because it is reasonable, will

not chill bidding and is necessary to further this process of selecting additional bids.  The

Proposed Purchaser has made clear that it will not proceed as a stalking horse without the

protection of ensuring that its expenses are reimbursed if the process it served to put into motion

results in some other party owning the Debtor's assets.  The Debtor's ability to continue to shop

its business for a higher or better offer, or even to market test the Proposed Purchaser's offer,

would be eliminated if the Debtor could not secure the Asset Purchase Agreement, inclusive of

the Expense Reimbursement provision.

42.     The Asset Purchase Agreement will form the basis upon which other bids will be

submitted and evaluated.  The minimum-required overbid exceeds the Expense Reimbursement,

and, therefore, the Expense Reimbursement both establishes a threshold for overbids and will not

result in a less beneficial net return from the sale.

43.     Payment of the Expense Reimbursement will not harm creditors.  Pursuant to the

Asset Purchase Agreement, the Debtor will incur the obligation to pay the Expense

Reimbursement only if the Debtor accepts an alternative transaction for the sale of all or

substantially all of the assets of the Debtor to any party other than the Proposed Purchaser and

that sale closes.  The Expense Reimbursement will be paid from the proceeds of an alternative

transaction in which the Prevailing Bidder is not the Proposed Purchaser, and the minimum

overbid will exceed the Expense Reimbursement.  In light of the benefit to the Debtor's estate

that is realized by having an agreed-upon Asset Purchase Agreement, which thereby enables the

Debtor to preserve the value of its estate and promote more competitive bidding, approval of the

Expense Reimbursement is warranted.

**B.    The Sale of Assets Is Authorized under Bankruptcy Code Section 363(b)**

44.    At the conclusion of the Sale Hearing, the Debtor will also request that the Court

approve the sale of the Acquired Assets to the Proposed Purchaser or such other Qualifying

Bidder who submits the Prevailing Bid.  The Debtor submits that the sale of the Acquired Assets

to the Proposed Purchaser pursuant to the Asset Purchase Agreement, or such as the agreement

as the Debtor may reach with the party submitting the Prevailing Bid, is in the best interest of the

Debtor's estate and its creditors.

45.    Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and

a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b)(1).  Although section 363 of the Bankruptcy Code does not specify a

standard for determining when it is appropriate for a court to authorize the use, sale or lease of

property of the estate, courts have required that such use, sale or lease be based upon a debtor's

sound business judgment.

46.    The decision to sell the Acquired Assets by private sale pursuant to section 363 of

the Code is an exercise of sound business judgment by the Debtor.

47.     The Asset Purchase Agreement will form the basis upon which other bids will be submitted and evaluated.  The minimum-required overbid exceeds the Expense Reimbursement, and, therefore, the Expense Reimbursement both establishes a threshold for overbids and will not result in a less beneficial net return from the Sale of Assets.

48.     Payment of the Expense Reimbursement will not harm creditors.  Pursuant to the Asset Purchase Agreement, the Debtor will incur the obligation to pay the Expense Reimbursement only if the Debtor accepts an alternative transaction for the sale of all or substantially all of the assets of the Debtor to any party other than the Proposed Purchaser and that sale closes.  The Expense Reimbursement will be paid from the proceeds of an alternative transaction in which the Prevailing Bidder is not the Proposed Purchaser, and the minimum overbid will exceed the Expense Reimbursement.  In light of the benefit to the Debtor's estate that is realized by having an agreed-upon Asset Purchase Agreement, which thereby enables the Debtor to preserve the value of its estate and promote more competitive bidding, approval of the Expense Reimbursement is warranted.

49.     The sale proceeds in the amount of $700,000 will be distributed to Greenfield Commercial Credit in partial satisfaction of the outstanding balance of $1,430,000 on its fully perfected secured claim, together with accumulated interest and costs.

50.     The Debtor's remaining assets which are not part of the sale are valued in excess of the remaining balance of the Debtor's obligation to Greenfield Commercial Credit.

51.     The Debtor believes that the sale of the Acquired Assets will permit the Debtor to pay a significant dividend to all of its creditors upon liquidation of all of the Debtor's remaining assets.

### C.    The Sale of Assets Free and Clear of Liens, Claims, and Interests Is Authorized Under Bankruptcy Code Section 363(f).

52.    The Debtor respectfully submits that it is appropriate to sell the Acquired Assets free and clear of all interests, pursuant to section 363(f) of the Bankruptcy Code, with all such interests attaching to the net sale proceeds of the Acquired Assets to the extent applicable.

53.    The Debtor believes that one or more of the tests under section 363(f) will be satisfied with respect to the transfer of the Acquired Assets pursuant to a Sale Order.  In particular, the Debtor believes only one lienholder, Greenfield Commercial Credit, has an interest in the Acquired Assets, and it has, or will, consent to the proposed sale, therefore, section 363(f)(2) will be satisfied.

### <u>NOTICE</u>

54.    Notice of this Motion has been given to (i) the United States Trustee for the District of Massachusetts; (ii) the Internal Revenue Service; (iii) the Massachusetts Department of Revenue; (iv) all parties known to Debtor who have or may have asserted liens against any of the Debtor's assets; (v) all creditors in the case; (vi) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (vii) all licensors of,  or other holders of interests in, all intellectual property rights licensed to, or used by, the Debtor in the design or manufacture of home, gift or other products, including, but not limited to, those products associated with the segment of the Debtor's business that it proposes to sell pursuant to this motion; and (viii) all other entities known to have expressed an interest in a transaction with respect to all or part of the Acquired Assets.  The Debtor submits that no further notice is required.

## NO PRIOR REQUEST

55.   No previous motion for the relief requested herein has been made to this or any other court.

## CONCLUSION

Wherefore, the Debtor respectfully requests that the Court enter orders as follows:

1.   Approving the Bid Procedures, including, but not limited to, approval and payment of the Expense Reimbursement as a super-priority administrative claim free and clear of all liens, claims and encumbrances from the sale proceeds, the notice procedures and such other relief as is set forth in the Bid Procedures Order attached hereto as Exhibit D;

2.   Approving the form and manner of Notice set forth herein;

3.   At the conclusion of the sale process as set forth in the Bid Procedures Order, conduct a final hearing regarding the proposed sale, and, at the conclusion of that hearing, enter an order approving the sale of certain of the Debtor's assets associated with the manufacture and sale of silver and related home and gift products, other than the Excluded Assets, free and clear of all liens, claims and encumbrances with such liens claims and encumbrances to attach to the proceeds of sale, determining the purchaser to be a good faith purchaser entitled to the protections of §363(m) of the Bankruptcy Code;

4.   Authorizing the payments as set forth above to Greenfield Commercial Credit; and

5.   Granting the relief requested herein and such other and further relief as the Court deems just and proper.

Respectfully submitted,

LUNT SILVERSMITHS, INC.

By its proposed counsel,

SHATZ, SCHWARTZ AND FENTIN, P.C.


By: /s/ Edward V. Sabella
    Edward V. Sabella, Esquire
    esabella@ssfpc.com
    BBO #436820
    Steven Weiss, Esquire
    sweiss@ssfpc.com
    BBO #545619
    L. Alexandra Hogan, Esquire
    lahogan@ssfpc.com
    BBO #672561
    1441 Main Street – Suite 1100
    Springfield, MA  01103
    Telephone - (413) 737-1131
    Facsimile - (413) 736-0375

Dated: December 18, 2009

09\0185\RB Sale Motion\RB Sale Motion.4806
# 9054547_v2