# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

In re:

**LUNT SILVERSMITHS, INC.**

**DEBTOR**

**Chapter 11**
**Case No. 09-32228-HJB**

## ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002 AND 6004 AND LOCAL RULE 6004-1 (A) AUTHORIZING AND APPROVING ASSET PURCHASE AGREEMENT BETWEEN LUNT SILVERSMITHS, INC., AS SELLER, AND PROPOSED PURCHASER, WHICH PROVIDES FOR THE SALE OF CERTAIN PERSONAL PROPERTY OF LUNT SILVERSMITHS, INC. FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, SUBJECT TO HIGHER AND/OR OTHERWISE BETTER OFFERS; AND (B) GRANTING RELATED RELIEF

Upon the motion dated December 18, 2009 (the "Sale Motion") of Lunt Silversmiths, Inc. ("Lunt" or the "Debtor"), as debtor and debtor in possession, for entry of an order, under sections 105 and 363 of title 11, United States Code 11 U.S.C. §§ 101, et seq., (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Massachusetts (the "Local Rules"), (I) (a) approving sale procedures in connection with sale of (the "Sale") of the Acquired Assets[1] pursuant to the Asset Purchase Agreement executed by the Debtor and Reed and Barton Corporation ("R&B") (as amended from time to time) ("Asset Purchase Agreement" or "Agreement")[2], (b) approving the Expense Reimbursement as detailed in the Agreement, (c) scheduling an auction and hearing to

---

[1]    Unless otherwise defined, capitalized terms used herein have the meanings given to them in the Sale Motion or the Asset Purchase Agreement.

[2]    A copy of the Asset Purchase Agreement is annexed hereto as **Exhibit "A"**.

approve the Sale transaction and approving the form and manner of notice thereof; and

ultimately, (II) an order approving the proposed sale of the Acquired Assets free and clear of all

liens and encumbrances to R&B or such entity that submits the highest and/or otherwise best bid

at the Auction to consider competing bids (as more fully described in the Sale Motion); and this

Court having held an initial hearing to consider the Sale Motion on or about January 6, 2010, and

having entered an order dated January 11, 2010, (the "Bid Procedures Order") pursuant to which

the Court, among other things, (i) established the date and time for the Auction and Sale Hearing;

(ii) approved bidding procedures regarding the proposed Sale (the "Bidding Procedures"), (iii)

approved the amount and payment of the Expense Reimbursement; and (iv) approved the form

of, and established procedures regarding, the Notice of Auction and Sale Hearing and Notice of

Filing Motion ("Notices"); and a hearing having been held on February 11, 2010 in connection

with the Sale Motion (the "Sale Hearing"); and adequate and sufficient notice of the Bid

Procedures, Sale Motion, and all transactions contemplated thereunder and in this Order having

been given in the manner required by the Bankruptcy Code, the Federal Rules of Bankruptcy

Procedure and as directed by the Court in the Bid Procedures Order and it appearing that no

other or further notice hereof is required; and all parties in interest having been heard, or having

had the opportunity to be heard, regarding the matters raised by the Sale Motion and relief

related thereto; and the Court having reviewed and considered (i) the Sale Motion and (ii) the

arguments of counsel, and the evidence proffered or adduced, at the Sale Hearing; and it

appearing that the relief requested in the Sale Motion is in the best interests of the Debtor, its

estate, creditors, and other parties in interest; upon all of the pleadings filed with the Court and

the record of the Sale Hearing made by the Debtor before this Court; and after due deliberation

and good and sufficient cause appearing therefor:

IT IS HEREBY FOUND AND DETERMINED THAT: [3]

## Jurisdiction, Final Order And Statutory Predicates

A.      The Court has jurisdiction to hear and determine the Sale Motion and to grant the relief requested therein, pursuant to 28 U.S.C. § § 157(b)(1) and 1334(b).  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of the Debtor's chapter 11 case and the Sale Motion is proper in this district under 28 U.S.C. § § 1408 and 1409(a).

B.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

C.      The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363(b), 363(f), 503 and 507 of the Bankruptcy Code, and Bankruptcy Rules 2002(a)(2), 2002(m), 6004, 9007 and 9014.

## Retention of Jurisdiction

D.      It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret and enforce the terms and provisions of this Order, the Asset Purchase Agreement, and to adjudicate, if necessary, any and all disputes involving the Debtor concerning or relating in any way to, or affecting, the Sale and related documents.

---

[3]      Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.  Any statements of the Court from the bench at the Sale Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this Order.

## Corporate Authority; Consents and Approvals

E.      The Debtor has full corporate power and authority to execute and deliver the

Asset Purchase Agreement and all other documents contemplated thereby and to consummate the

Sale. The Sale has been duly and validly authorized by all necessary corporate actions of the

Debtor and any applicable affiliate, and by this Court. There are no consents or approvals other

than as expressly set forth in the Asset Purchase Agreement, that are required for the Debtor to

consummate the Sale.

## Notice of the Sale Motion

F.      As evidenced by the certificates of service previously filed with this Court (the

"Notice Certificates") and based on representations of counsel at the Sale Hearing (i) due,

proper, timely, adequate, and sufficient notice of the Sale Motion, the Sale Hearing, the Auction,

and the Sale has been provided in accordance with section 363 of the Bankruptcy Code and

Bankruptcy Rules 2002 and 6004, and in compliance with the Bid Procedures Order, (ii) such

notice was good and sufficient, and appropriate under the circumstances, and (iii) no other or

further notice of the Sale Motion, the Asset Purchase Agreement, the Sale Hearing, or the relief

sought with respect thereto shall be required.

G.      A reasonable opportunity to object or be heard with respect to the Asset Purchase

Agreement, Sale Motion, and Sale Hearing has been afforded to all interested persons and

entities, including, among others:  (i) all parties entitled to receive notice as of the date hereof

pursuant to Bankruptcy Rule 2002(a)(2), (ii) all parties who the Debtor believes have an interest

in acquiring the Acquired Assets, (iii) all entities listed on the Debtor's schedules as holding

claims secured by, and all entities who recorded or filed proof(s) of claim secured by, the

Acquired Assets, and (iv) all entities who have recorded in the public record any lien, interest or encumbrance in or upon the Acquired Assets.

H.    As demonstrated by the evidence proffered at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, (1) the Debtor has appropriately marketed the Acquired Assets in full compliance with the Bidding Procedures Order (including with respect to the solicitation and evaluation of bids, the conduct of the Auction and the acceptance of the offer set forth in the Agreement) and all such actions are hereby ratified and approved; (2) the Bidding Procedures and the Auction were duly noticed and conducted in a non-collusive, fair and good-faith manner; and (3) a reasonable opportunity has been given to any interested party to make a higher and better offer for the Acquired Assets; and (4) the Debtor determined that the Purchaser is the Prevailing Bidder.

### Sound Business Purpose for the Sale

I.    The Debtor has advanced sound and sufficient business reasons, and it is a reasonable exercise of the Debtor's business judgment to sell all right, title and interest in and to the Acquired Assets on the terms set forth in the Asset Purchase Agreement and to consummate the Sale.

J.    The Debtor has demonstrated both (i) good, sufficient, and sound business purpose and justification and (ii) compelling circumstances for the entry into the Asset Purchase Agreement and the consummation of the Sale pursuant to section 363(b) of the Bankruptcy Code prior to confirmation of a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value to the Debtor's estate.

**Highest and Best Offer**

K.     The Debtor's determination that Purchaser's Bid under the terms of the Asset

Purchase Agreement constitutes the highest and best offer for the Assets constitutes a valid and

sound exercise of the Debtor's business judgment.

L.     The consideration in the amount of  Five Hundred Fifty-Two Thousand Sixteen

and 62/100 Dollars ($552,016.62) (the "Asset Sale Proceeds") provided by the Purchaser

pursuant to the Asset Purchase Agreement: (1) is fair and reasonable under the circumstances of

the Debtor; (2) is the highest and best offer for the Acquired Assets under the circumstances of

the Debtor because, among other things, (a) despite advertisement in a national publication,

direct e-mail solicitation of potential strategic buyers through a trade publication's  subscriber list

and direct negotiations with at least one potential submitter of an Overbid (as defined in the

Bidding Procedures), no Overbids or other offers were received (b) it has been represented that

the Purchaser has sufficient cash to consummate the Closing, and (c) the Purchaser is prepared to

consummate the transactions contemplated by the Asset Purchase Agreement in compliance with

the terms and conditions of that Agreement; (3) the Sale will provide recovery to the Debtor's

bankruptcy estate, which, in the reasonable business judgment of the Debtor, is fair, reasonable

and in the best interest of the Debtor and its estate; and (4) constitutes reasonably equivalent

value and fair consideration under the Bankruptcy Code and applicable non-bankruptcy law.

M.     Based on the record before it, it appears to the Court that no other entity has

submitted a qualified bid providing greater economic value for the Acquired Assets than the

Purchaser.

**Good Faith of the Purchaser**

N.      The Asset Purchase Agreement and the Sale were negotiated, proposed and

entered into by the Debtor and the Purchaser without collusion, in good-faith and from arm's

length bargaining positions. The Purchaser is a good-faith purchaser within the meaning of

section 363(m) of the Bankruptcy Code, and is therefore entitled to the protections afforded

thereby. In the absence of a stay pending appeal, the Purchaser will be acting in good faith

within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions set

forth in the Asset Purchase Agreement at any time after the entry of this Order.

O.      Neither the Debtor nor the Purchaser has engaged in any conduct that would

cause or permit the Asset Purchase Agreement or the Sale to be avoided under Section 363(n) of

the Bankruptcy Code, and the Asset Purchase Agreement and the Sale are not avoidable.

### Validity of Transfers

P.      The transfer of the Acquired Assets to the Purchaser is intended to be, and to the

full extent permissible by law is, a legal, valid and effective transfer of the Acquired Assets vests

the Purchaser with all right, title and interests of the Debtor in and to the Acquired Assets, free

and clear of all Claims, Liens, encumbrances and other interests (collectively, the "Interests"),

including, but not limited to (1) those that purport to give to any party a right or option to effect

any forfeiture, modification, right of first refusal or termination of the Debtor's or Purchaser's

interest in the Acquired Assets, or any similar rights; (2) those relating to taxes arising under or

out of, in connection with, or in any way relating to the operation of the Acquired Assets prior to

the consummation of the Sale (the "Closing"); and (3) (a) those arising under all mortgages,

deeds of trust, security interests, conditional sale or other title retention agreements, pledges,

liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature,

if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income

or other exercise of any attributes of ownership; and (b) all debts, claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of the Debtor's bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, Claims otherwise arising under doctrines of successor liability to the greatest extent permitted by applicable law.

Q.    The Purchaser shall not be deemed, as a result of any action taken in connection with the purchase of the Acquired Assets, to:  (1) be a successor to the Debtor; or (2) have, *de facto* or otherwise, merged with or into the Debtor.

## Section 363(f) of the Bankruptcy Code is Satisfied

R.    The Debtor may sell the Acquired Assets free and clear of all Interests because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been or will be satisfied.  The holders of Interests in or against the Debtor, its estate or the Acquired Assets, and non-Debtor parties to any related agreements who did not object, or who withdrew their objections, to the Sale Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

S.    The Purchaser would not have entered into the Agreement and will not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its bankruptcy estate and its creditors and other stakeholders, if the Sale of the Acquired Assets to the Purchaser is not free and clear of all Interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of such Interests including, but not

successors and assigns, including, but not limited to, all non-Debtor parties asserting any

Interests in or against the Debtor, its estate or the Acquired Assets.

### Approval of Asset Purchase Agreement

5.   The Asset Purchase Agreement (including all of the related documents, exhibits,

schedules, lists and agreements) and the transactions contemplated thereby are approved in all

respects.

6.   Pursuant to sections 363(b) and (f) of the Bankruptcy Code and the Asset Purchase

Agreement, the Debtor is authorized, empowered and directed to (i) take any and all actions

necessary or appropriate to effect, consummate and close (a) the assignment, transfer and

conveyance of the Acquired Assets to the Purchaser, (b) the Sale, and (c) this Order, and (ii)

execute and deliver, perform under, consummate, implement and close fully the Asset Purchase

Agreement, together with all additional instruments and documents that may be reasonably

necessary or desirable to implement the Sale.

7.   The Purchaser is directed to pay by wire transfer at Closing and conditioned upon the

Debtor's delivery of such documents of transfer and other documents as are required in the Asset

Purchase Agreement, Four Hundred Ninety-Nine Thousand Five Hundred Sixteen and 62/100

Dollars ($499,516,62), which represents the Asset Sale Proceeds (less credit for its Deposit in the

amount of $52,500.00) to Shatz, Schwartz and Fentin, P.C., as escrow agent ("SSF"), for the

Debtor, and otherwise perform its obligations under the Asset Purchase Agreement.  SSF, as

escrow agent, shall hold all such proceeds in a trust or client funds account (the "Escrow

Account") and only distribute the Funds in accordance with this Order and/or any subsequent

orders of this Court.

limited to, (1) any employment or labor agreements; (2) any pension, welfare, compensation or

other employee benefit plans, agreements, practices and programs, including, without limitation,

any pension plan of the Debtor; (3) any other employee, worker's compensation, occupational

disease or unemployment or temporary disability related Claim; (4) any products liability or

similar Claims, whether pursuant to any state or federal laws or otherwise; (5) any bulk sales or

similar law; (6) any tax statutes or ordinances, including, without limitation, the Internal

Revenue Code of 1986, as amended; and (7) any theories of successor liability.

### Waiver Of Stays

T.    The Debtor has articulated good and sound business reasons for waiving the stay

otherwise imposed by Bankruptcy Rule 6004(h), including those set forth above.

## CONCLUSIONS OF LAW

NOW THEREFORE, IS HEREBY ORDERED, ADJUDGED AND DECREED AS

FOLLOWS:

1.    To the extent any conclusion of law set forth below herein constitutes a finding of

fact, this Court so finds.

### General Provisions

2.    The Sale Motion is granted and approved in all respects with respect to the Sale,

subject to the provisions of this Order.

3.    Any objections to the Sale Motion and the relief requested therein that have not been

withdrawn, waived, or settled, are denied and overruled on the merits with prejudice.

4.    The terms and provisions of this Order shall be binding in all respects upon the

Debtor, its estate, creditors, members, managers and shareholders of any of the Debtor, the

Purchaser and its officers, directors and members, all interested parties, and their respective

8.  SSF is further authorized to deduct from the Asset Sale Proceeds the amounts

described in Paragraphs 9 and 10 herein below and to pay by wire transfer from the Escrow

Account the amount of Five Hundred Twenty Thousand Four Hundred Ninety and 30/100

Dollars ($520,490.30) to Greenfield Commercial Credit, ("Bank") within one business day of

receiving the Purchaser's wire transfer as set forth in Paragraph 7 herein above.

9.  Pursuant to this Court's Order (A) Approving Sale Procedures In Connection With

Sale of Certain of the Debtor's Assets, (B) Approving the Expense Reimbursement, (C)

Scheduling an Auction and Hearing to Approve the Transaction and Approving the Form and

Manner of Notice Thereof dated January 11, 2010, the amount of Six Thousand Five Hundred

Twenty Six and 32/100 Dollars ($6,526.32) shall be immediately paid to SSF from the Escrow

Account to reimburse SSF for the expenses incurred to advertise the Asset Sale in the Wall Street

Journal and an email blast by Home Furnishing Magazine, a trade publication.

10. Pursuant to this Court's Interim Order (I) Authorizing Debtor to Utilize Cash

Collateral Pursuant to 11 U.S.C. 363 and Granting Adequate Protection to Pre-Petition Secured

Party Pursuant to 11 U.S.C. §§ 361 and 363, and (II) Scheduling Final Hearing Pursuant to

Bankruptcy Rules 4001(B) dated January 11, 2010, the amount of Twenty Five Thousand and

00/100 Dollars ($25,000.00) shall be held in the Escrow Account from the Asset Sale Proceeds

to pay the reasonable and necessary attorneys' fees of both the Debtor's counsel and counsel to

any unsecured creditors committee which are associated with the Debtor's liquidation during the

period specified in said Interim Order (the "Carve Out").  The Carve Out shall be paid to counsel

from the Escrow Account only at such time and in such amount as authorized and approved by

this Court after application by counsel, notice and hearing.

11. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code and on the terms set forth in the Asset Purchase Agreement, upon the Closing provided in the Asset Purchase Agreement, the Acquired Assets shall be and hereby are deemed transferred and assigned to the Purchaser effective as of 11:59 p.m. (Prevailing Eastern Time) on the Closing Date, free and clear of all liens, claims, encumbrances and other Interests arising or relating to the period prior to the Closing.

12. The transfer of the Acquired Assets to the Purchaser pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of good and marketable title of the Acquired Assets, and vests or will vest the Purchaser with all right, title, and interest to the Acquired Assets, free and clear of all Interests except as expressly stated as obligations of the Purchaser under the Asset Purchase Agreement and/or under this Order.

13. Except as expressly permitted by the Asset Purchase Agreement or otherwise specifically provided by this Order, the Bankruptcy Code, or Bankruptcy Rules, (i) all persons and entities holding interests of any kind and nature accruing, arising or relating to a period prior to the Closing Date with respect to the Acquired Assets hereby are barred, estopped, and permanently enjoined from asserting such Interests against the Purchaser or any of its affiliates, stockholders, members, managers, partners, parent entities, successors, assigns, officers, directors or employees, agents, representatives, and attorneys, or the Acquired Assets, and (ii) the Purchaser shall have no liability or responsibility for any such Interest arising, accruing, or relating to a period prior to the Closing Date, except as otherwise provided for in the Asset Purchase Agreement.

14.     Each non-Debtor party to any agreements with the Debtor that are not part of the Acquired Assets are hereby barred, estopped, and permanently enjoined from asserting any claims against the Purchaser relating to any such agreements.

15. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets or a bill of sale transferring good and marketable title of the Acquired Assets to the Purchaser.

16. If any person or entity that has filed financing statements, or other documents or agreements evidencing Interests in the Debtor or the Acquired Assets shall not have delivered to the Debtor prior to the Closing, in proper form for filing and execution by the appropriate parties, termination statements, instruments of satisfaction or releases of all Interests in the Debtor or the Acquired Assets or otherwise, then the Purchaser or its assignee is hereby authorized to file, register or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all Interests in the Debtor or the Acquired Assets of any kind or nature whatsoever, and shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title companies, government departments, secretaries of state and other persons authorized by law to accept, file, register or otherwise record or release any documents or instruments or who may be required to report or issue any title or state of title in or to the Purchased Assets.

## Binding Effect

17. The sale, transfer, assignment and delivery of the Acquired Assets shall not be subject to any Interests and Interests of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtor.  All persons holding Interests in the Debtor, their estates or the

Acquired Assets of any kind or nature whatsoever shall be, and hereby are, forever barred,

estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such

Interests of any kind or nature whatsoever against the Purchaser, its property, its successors and

assigns, its affiliates or the Acquired Assets, with respect to any Interest of any kind or nature

whatsoever such person or entity had, has, or may have against or in the Debtor, its estates, or the

Acquired Assets.  The transfer of the Acquired Assets to the Purchaser shall constitute an

authorized first sale; the Purchaser shall be deemed an owner of such inventory pursuant to 17

U.S.C. § 109(a) authorized to resell such inventory free and clear of any claims of licensors or

any other party, including but not limited to any claims of copyright infringement.  Following the

Closing Date, no holder of an Interest in the Debtor shall interfere with the Purchaser's title to or

use and enjoyment of the Purchased Assets based on or related to such Interests and all such

Interests, if any, shall be and hereby are channeled, transferred and attached solely and

exclusively to the proceeds of the Sale.

18. This Order (a) shall be effective as a determination that, at Closing, all Interests of

any kind existing as to the Acquired Assets prior to the Closing have been unconditionally

released, discharged and terminated as set forth herein, and that the conveyances described

herein have been effected, with any such Interests to attach to the cash proceeds of the Sale in the

same amount, validity and priority as existed as of the Petition Date, and (b) shall be binding

upon and shall govern the acts of all entities including, without limitation, all filing agents, filing

officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative

agencies, governmental units, secretaries of state, federal, state, and local officials, and all other

persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assets.

19. Each and every federal, state, and local governmental agency, unit or department is hereby directed to accept this Order as sole and sufficient evidence of the transfer of title of the Assets and such agency or department may rely upon this Order in connection with the Sale.

20. All entities that are in possession of some or all of the Acquired Assets upon the Closing are hereby directed to surrender possession of the Acquired Assets to the Purchaser at the Closing.

21. Except as otherwise expressly provided for in the Agreement or in this Order, the Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Acquired Assets upon Closing and shall not be liable for any Claims against the Debtor or any of its predecessors or affiliates, and the Purchaser shall have no vicarious or successor liabilities of any kind, whether known or unknown, with respect to the Debtor arising prior to the Closing.  The consideration paid by the Purchaser constitutes valid and valuable consideration for the releases of potential Claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Interests against the Debtor or the Acquired Assets.

22. Except as otherwise expressly provided in the Agreement and to the fullest extent permitted by law, the Purchaser shall have no obligation to pay wages, bonuses, severance pay, benefits or any other payment with respect to employees or former employees of the Debtor. Except as otherwise provided for in the Agreement, the Purchaser shall have no liability with respect to employee welfare or retention, benefit and/or incentive plan to which the Debtor is a party and relating to the Acquired Assets, and the Purchaser shall in no way be deemed a party to

or assignee of any such agreement, and no employee of the Purchaser shall be deemed in any way covered by or a party to any such agreement. In the event that, as a result of the transaction contemplated hereunder, employees of the Debtor are laid off or their employment with the Debtor otherwise is terminated, the Debtor is authorized to use the Excluded Assets to satisfy claims of such terminated employees for wages, accrued vacation pay and any other claim due to such employees upon termination.

23. After the Closing Date, no person or entity, including without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against the Acquired Assets on account of, or (b) collect or attempt to collect from the Purchaser or any of its affiliates, any tax or other amount alleged to be owing by the Debtor (i) for any period commencing before and concluding prior to or after the Closing, or (ii) assessed prior to and payable after the Closing Date, except as otherwise specifically provided in the Asset Purchase Agreement.

<u>Miscellaneous Provisions</u>

24. This Court retains jurisdiction, even after the closing of this case, to:

  (i)   interpret, implement and enforce the terms and provisions of this Order and the terms of the Asset Purchase Agreement, all amendments thereto and any waivers and consents thereunder and of each of the agreements executed in connection therewith;

  (ii)  enter orders in aid or furtherance of the Sale;

  (iii) resolve any disputes arising under or related to the Asset Purchase Agreement or the Sale, or to ensure peaceful use and enjoyment of the Assets;

  (iv)  adjudicate any and all issues and/or disputes, if any, relating to the Purchaser's or the Debtor's right, title or interest in, to and under the Asset Purchase Agreement and related agreements;

(v)    adjudicate all issues concerning prorations under the Asset Purchase
Agreement (including taxes) consistent with the terms of the Asset
Purchase Agreement;

(vi)    hear and resolve any application (or disputes or issues relating thereto) to
the Asset Purchase Agreement;

(vii)    adjudicate any and all issues and/or disputes relating to the Debtor's right,
title or interest in the Assets and the proceeds thereof, the Sale Motion
and/or the Asset Purchase Agreement; and

(viii)    re-open the Debtor's chapter 11 cases to enforce the provisions of this
Order.

25. Neither the Sale, nor the consideration provided by the Purchaser for the Assets under

the Asset Purchase Agreement, may be avoided under section 363(n) of the Bankruptcy Code

and each and every person or entity is hereby barred, estopped, and permanently enjoined from

commencing or continuing an action seeking relief under section 363(n) of the Bankruptcy Code.

26. The Debtor and the Purchaser have undertaken the Sale in good faith (as that term is

used in section 363(m) of the Bankruptcy Code) and without collusion, and the Purchaser is and

shall continue to be in good faith (as that term is used in section 363(m) of the Bankruptcy Code)

by proceeding to close the Sale. Accordingly, the reversal or modification on appeal of the

authorization to consummate the Sale approved hereby shall not affect the validity and

enforceability of such Sale, unless such authorization is duly stayed pending such appeal. The

Purchaser is a good faith Purchaser of the Assets and entitled to all of the protections afforded by

Section 363(m) of the Bankruptcy Code.

27. The failure specifically to include any particular provision of the Asset Purchase

Agreement in this Order shall not diminish or impair the efficacy of such provision, it being the

intent of this Court that the Asset Purchase Agreement and each and every provision, term, and

condition thereof be authorized and approved in its entirety.

28. Nothing contained in any plan of reorganization confirmed in this case or the order of confirmation confirming any such plan shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Order.

29. The terms and provisions of the Asset Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate, and its creditors and interest holders, the Purchaser, and its respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting a Claim against or Interest in the Assets to be sold to the Purchaser pursuant to the Asset Purchase Agreement, notwithstanding any subsequent appointment of any trustee for the Debtor under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise shall be binding in all respects.

30. Notwithstanding Bankruptcy Rules 7062 and 6004(h), to the extent applicable, the Court finds that there is no reason for delay in the implementation of this Order and, thus, this Order shall be effective and enforceable immediately upon entry. The Debtor and the Purchaser may consummate the Asset Purchase Agreement at any time after entry of the Order by waiving any and all closing conditions set forth in the Asset Purchase Agreement that have not been satisfied and by proceeding to close the Sale without any notice to the Court, any pre-petition or post-petition creditor of the Debtor and/or any other party in interest.

31. The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement is not material.

32. The provisions of this Order are non-severable and mutually dependent.

*Cynthia Salus-smiths Inc.*
*Order for sale of inventory*

Dated: Springfield, Massachusetts, _February 11_, ~~2009~~ 2010

_____
UNITED STATES BANKRUPTCY JUDGE

09\0185\RB Sale Motion\Final Order\Final Sale Order and Exhibit A\2-11-10 Sale Order.4805

EXHIBIT A – FINAL ASSET PURCHASE AGREEMENT

**IMAGE NOT AVAILABLE.**